IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Robert L. Bowens, ) | |
| ) | Civil Action No. 8:04-23138-TLW-BHH |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Colie Rushton, Warden; and Henry ) | |
| McMaster, Attorney General ) | |
| for South Carolina, ) | |
| ) | |
| Respondent. ) | |
| ) | |

The petitioner, Robert L. Bowens, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254. The petitioner contends that, after entering the South Carolina Department of Corrections, the offense for which he was convicted was reclassified from non-violent to violent resulting in a revocation of good-time credits[1] and his parole eligibility. Because the petitioner contests the execution of his sentence and not the validity of his conviction, his petition is more rightly considered as one pursuant to Title 28, United States Code, Section 2241. *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir.1997) (habeas review is available under § 2241 when an inmate seeks to attack the execution of a sentence, rather than to collaterally attack the validity of a conviction and sentence, an action properly brought pursuant to § 2254); *see also In re Vial*, 115 F.3d 1192 (4th Cir.1997) ("For example, attacks on the execution of a sentence are properly raised in a § 2241 petition."). The respondents have filed a motion for summary judgment seeking dismissal of the petition.

---

[1] It is not precisely clear whether the petitioner is contesting revocation of actual good-time credits earned or simply his *eligibility* to earn good-time credits. From his response to the special interrogatories of the Court, it would appear to be the former. Ultimately, the distinction is not material to the resolution of this matter.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this Magistrate Judge is authorized to review post trial petitions for relief and submit findings and recommendations to the District Court.

## PROCEDURAL HISTORY AND FACTS PRESENTED

### CONVICTION AND DIRECT APPEAL

The record reveals that the petitioner is currently incarcerated in the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court of Pickens County. The petitioner was indicted at the March 20, 1997 term of the Court of General Sessions for distribution of crack cocaine. On November 3, 1997, the petitioner was tried by a jury and was convicted as charged. The Honorable Henry F. Floyd sentenced the petitioner to confinement for a period of twenty-five (25) years and fined him $25,000.

The petitioner filed a timely Notice of Appeal on November 17, 1997, alleging error in regards to the trial court's (1) admission into evidence of a video tape of the petitioner's arrest and (2) a failure to give a curative instruction concerning testimony of a prior drug transaction involving the petitioner. The South Carolina Court of Appeals affirmed the petitioner's conviction and sentence in an unpublished decision filed October 20, 1998. *State v. Robert L. Bowens*, 1998-UP-453 (S.C. Ct. App. October 20, 1998).

### PCR APPLICATION

The petitioner filed an application for post-conviction ("PCR") relief on January 18, 1999 (99-CP-39-50), alleging ineffective assistance of counsel. The Honorable A. Victor Rawl issued an order dated May 31, 2000, denying and dismissing the application. The petitioner did not file an appeal of the PCR decision. Instead he filed, *pro se*, a state Petition for Writ of Habeas Corpus (hereinafter "State Petition") on May 15, 2003. The petitioner subsequently retained counsel who filed an amended State Petition on April 13, 2004, alleging that the trial court lacked subject matter jurisdiction to sentence the petitioner to distribution of crack cocaine, second offense. The Honorable Edward W. Miller denied

and dismissed the State Petition. The petitioner subsequently filed a *pro se* appeal of Judge Miller's decision on February 24, 2005. As of the briefing in this case, the South Carolina Court of Appeals had not issued a final order in regards to the petitioner appeal of the State Petition. None of the issues presented and considered in the petitioner's PCR application or State Petition relate to the claim which is now the subject of his federal habeas corpus petition.

### FEDERAL HABEAS CORPUS PETITION

On December 16, 2004, the petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (hereinafter "Federal Petition"). The sole ground for relief in the Federal Petition is as follows:

> Trial Court sentence me to 25 year non-violated/upon entering the department of corrections they re-classify me for no reason at all. So I will like a hearing to reclassify my status, and to have my good time restored. I have had no write-ups. SCDC had no authority to change the status of my sentence and conviction.

The petitioner filed a response to Court ordered special interrogatories on January 7, 2005. In that response, the petitioner indicated that he had had instituted a South Carolina Department of Corrections ("SCDC") step 1 grievance with the responsible authorities at the McCormick Correctional Institution but that he had not received any response. (Ans. Ct. Special Interrog. No. 1.) The petitioner further indicated that he had been reclassified from "Level-2, to Level-3 [Violent], which took away [his] good time and parole eligibility." (Ans. Ct. Special Interrog. No. 12.) The petitioner claims that he was originally "sentence [sic] 65% non-violent, level-2, with eligibility for good time, and work credits, and parole eligibility." (Ans. Ct. Special Interrog. No. 10.)

The respondents filed a motion for summary judgment on March 25, 2005.

## LAW AND ANAYLSIS

### Liberal Construction of *Pro Se* Complaint

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**DISCUSSION**

**I.    ONE YEAR PERIOD OF LIMITATIONS**

The respondents first contend that the petitioner's petition should be dismissed because it was not filed within the one-year period of limitations proscribed by 28 U.S.C. § 2244(d).[2] Specifically, the respondents argue that the factual predicate of the petitioner's present federal claim was known as early as May 15, 2003,[3] the time of filing of his *pro se* State Petition and that he had one year from that date to file a federal habeas petition. The State Petition included the following claim:

> (c) Petitioner was sentenced to a paroleable offense. A parole hearing was scheduled for January 15, 2002. The Respondent S.C. Department of probation, [sic] Parole and Pardon Services and/or S.C. Department of Corrections and/or both, illegally, in violation of Petitioner's Federal and State Constitutional rights, without jurisdiction to do so, disqualified Petitioner from parole participation.

(State Petition for Writ of Habeas Corpus, dated May 15, 2003, at 3.) The respondents contend that the State Petition is evidence that the petitioner knew as early as May 15, 2003 of the revocation of his parole eligibility and good-time credits and, therefore, that his one year limitations period expired May 15, 2004. Because the petitioner filed his habeas petition on December 16, 2004, the respondents posit that it is out of time by 216 days.

---

[2] Title 28, United States Code, Section 2244(d) provides in relevant part:

> (1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> . . .
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

[3] In fact, the State Petition was signed as of April 23, 2003, and, therefore, the knowledge of claims and facts contained therein should be imputed to him as of that date.

5

The petitioner responds that he was only aware of the alleged reclassification of the underlying offense from non-violent to violent, at the earliest, on August 6, 2004, the date of the delivery of "petitioners petition," presumably for parole.[4] The petitioner alleges, however, that he did not have "valid proof" of the purported reclassification until his scheduled parole hearing on August 26, 2004, when he was apparently informed of his ineligibility.

Regardless, the Court is persuaded that a genuine issue of fact exists as to the the date on which the factual predicate of the petitioner's present claim could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(1)(D). Even the respondents admit that "there is no evidence at [sic] to when Petitioner became aware of the alleged miscalculation." (Mot. Summ. J. at 5.) Although the claim contained in the petitioner's May 2003 State Petition appears to relate to his parole eligibility and the alleged reclassification of the underlying offense, that claim was articulated too generally to know whether or not it was actually predicated on the same factual basis as the present Federal Petition. The relatedness, if any, between the claims, therefore, cannot be resolved adequately in the absence of an evidentiary hearing. However, because Bowens' petition should be dismissed for other reasons, discussed *infra* and which would preclude review by this Court even if his claim were timely, the Court declines to inquire further.

## II.   EXHAUSTION OF STATE REMEDIES

The respondents next contend that the petitioner has failed to exhaust his state remedies. The Court agrees. The petitioner must exhaust all available state court procedures prior to seeking federal court review of his claim. 28 U.S.C. §2254(b)(1)(A); *see Weeks v. Angelone*, 176 F.3d 249, 257 (4th Cir. 1999). Although 28 U.S.C. § 2241

---

[4] It is not fully clear what the phrase "petitioners petition" is intended to reference. Regardless, the petitioner concedes some knowledge of the alleged reclassification as early as August 6, 2004.

contains no express reference to exhaustion of state remedies, courts have held that exhaustion is necessary under Section 2241 as well. *See*, *e.g.*, *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490-491(1973); *Moore v. De Young*, 515 F.2d 437, 442-443 (3rd Cir.1975). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). The exhaustion requirement includes both administrative and state court remedies. *Clonce v. Presley*, 640 F.2d 271, 273-74 (10th Cir.1981) (stating that a prisoner must "exhaust the respective state and administrative remedies before challenging his state or federal custody by habeas corpus"); *Crosby v. Warden, Roxbury Correctional Institution*, 2004 WL 2294665 (4th Cir. Oct 08, 2004) (Unpublished) (citing *Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir.2002) (state prisoner bringing § 2241 petition must exhaust state and administrative remedies).

In *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997), the Fourth Circuit Court of Appeals set forth the exhaustion requirement as follows:

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a §2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts. . . .
>
> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced . . . .

*Id.* at 910-11 (citations omitted).

In neither his PCR application nor his State Petition, has the petitioner previously raised any claims regarding parole and good-time credits. As indicated, the petitioner

7

initially included in his State Petition a claim related to his parole eligibility, although it is not clear whether that claim is related to the one now before the Court. Regardless, his attorney filed an amended habeas petition on April 13, 2004, which did not include any such claim. More importantly, at the hearing of the petitioner's State Petition, his attorney expressly represented to the court that the petitioner was only challenging his conviction based on lack of subject matter jurisdiction and that the petitioner had abandoned any claim related to his parole:

> **Mr. Newton** [Assistant Attorney General]: Actually, your honor, Mr. Bowens also makes a claim regarding his parole eligibility and a few other one [sic]. Our motion – the motion to dismiss generally relates to his claims other than subject matter jurisdiction. I apologize if that wasn't clear, your honor.
>
> **Mr. Alexander** [Counsel for Bowens]: Judge, the only exception that we're going on is the issue of subject matter jurisdiction. Frankly —
>
> **The Court**: Okay. Well, Let's go. All Right.
>
> **Mr. Alexander**: The parole issue flows from that. I mean, the parole issue will be decided depending on the court's decision on subject matter jurisdiction.
>
> **The Court**: *Well I'm not going to make a parole eligibility decision.*
>
> **Mr. Alexander**: I understand.
>
> **The Court**: So if the Department of Corrections wants to do that, that's up to them. But I'm going to – so he is abandoning his other claims. He's proceeding on subject matter jurisdiction?
>
> **Mr. Alexander**: That's correct.

(April 19, 2004 R. at 4 (emphasis added).) As emphasized, the Court expressly stated that it would not make a parole eligibility decision. *Id.*

The petitioner has also not availed himself of available administrative procedures. Although the petitioner has instituted an administrative action with the SCDC, he has not exhausted his administrative remedies. In his response to the Court's Special Interrogatories, dated January 7, 2005, the petitioner indicated that he filed a South

8

Carolina Department of Corrections step 1 grievance with the responsible authorities at the McCormick Correctional Institution concerning the alleged reclassification of his offense. As of the date of his response to the interrogatories, the petitioner claimed that he had received no response to his grievance in 45 days. In his response to the respondents' Motion for Summary Judgment, the petitioner does not contend that he has ever completed the grievance process.[5] In fact, the petitioner makes no rejoinder to the exhaustion argument of the respondents whatsoever. Critically, once the petitioner completes the grievance process and before he can make resort to this Court, he is further required to appeal any unfavorable decision to an administrative law judge under the South Carolina Administrative Procedures Act ("APA") as authorized by *Al-Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (S.C.1999).

In *Al-Shabazz*, the South Carolina Supreme Court held that "an inmate may seek review of [the SCDC's] final decision in an administrative matter under the APA." *Id.* at 750. The court explained that such "administrative matters typically arise in two ways: (1) when an inmate is disciplined and punishment is imposed and (2) *when an inmate believes prison officials have erroneously calculated his sentence, sentence-related credits, or custody status*." *Id.* (emphasis added). Here, the petitioner claims that prison officials have wrongfully reclassified his offense and, thereby, revoked his good-time credits and parole eligibility. These are matters which can be appealed through the South Carolina APA and must be appealed before the petitioner can seek redress in federal court. *United States v. Harris*, 11 Fed. Appx. 108, 2001 WL 378337 (4th Cir. Apr.16, 2001) (holding that an inmate must first exhaust administrative remedies before challenging computation of a sentence through § 2241); *Everett v. Ray*, 2000 WL 429928 (4th Cir. Apr.21, 2000) (holding that to the extent an inmate seeks to challenge his sentence under § 2241, he

---

[5] It has not been argued and the Court finds no basis to conclude that circumstances exist that render the state administrative process ineffective to protect the petitioner's rights.

must first exhaust his administrative remedies); *see*, *e.g.*, *Beckner v. Miro,* 2001 WL 34681747 (D.S.C. June 15, 2000) (holding 2241 petitioner failed to exhaust remedies because he had "not sought relief under the holding in *Al-Shabazz*."). Accordingly, the petitioner's petition should be dismissed for failure to exhaust his available state administrative remedies.

### III.    MERITS OF THE PETITIONER'S CLAIMS

Finally, the respondents argue that the petitioner's claims fail on the merits. Unfortunately, both the petitioner and the respondents have failed to adequately educate the Court as to the factual circumstances surrounding the alleged reclassification of his offense and the concomitant revocation of his good-time credits and parole eligibility. The respondents nowhere contest that the petitioner's underlying offense was reclassified or that he has lost parole eligibility and good-time credits; but neither do they explain why the underlying offense was reclassified or why he lost parole eligibility and good-time credits as a result. It is peculiar that so much attention is paid by the respondents to the procedural history of the petitioner's direct appeal and collateral attack but not a single sentence is devoted to the timing, the basis, or the particulars of the reclassification of the petitioner's underlying offense, which is the heart of his claim. If not for the petitioner's failure to exhaust his administrative remedies an evidentiary hearing surely would have been necessary for the unexceptional briefing.

The respondents summarily contend that the petitioner's claims fail on the merits simply because he has no liberty interest in parole as a general matter, which the respondents emphasize is created as an "act of grace." In the absence of the petitioner's failure to exhaust his state remedies, the Court notes that this argument would be an insufficient basis to defeat the petitioner's petition, because the petitioner is not contesting a decision of the parole board to deny him parole but instead he is contesting the revocation of his parole *eligibility*. In *Sullivan v. S.C. Dept. of Corrections*, 586 S.E.2d 124 (S.C. 2003),

upon which the respondents rely, the Supreme Court of South Carolina expressly held that "the permanent denial of parole eligibility implicates a liberty interest sufficient to require at least minimal due process, and, therefore, review by the ALJD." *Id.* at 127. The respondents would be misguided to rely on their current position going forward.

Notwithstanding, the petitioner's Federal Petition should be dismissed without prejudice for failure to exhaust his administrative remedies.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondents' motion for summary judgment be granted.

IT IS SO RECOMMENDED.

                                                            s/Bruce H. Hendricks
                                                            United States Magistrate Judge

November 7, 2005
Greenville, South Carolina